**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorney for Plaintiff*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BARBARA STANFORD TANGUMA, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. |
| *Plaintiff*, | JURY TRIAL DEMANDED |
| v. | CLASS ACTION |
| C. R. BARD, INC., TIMOTHY M. RING, DAVID M. BARRETT, ROBERT M. DAVIS, HERBERT L. HENKEL, JOHN C. KELLY, DAVID F. MELCHER, GAIL K. NAUGHTON, TOMMY G. THOMPSON, JOHN H. WEILAND, ANTHONY WELTERS, TONY L. WHITE, BECTON, DICKINSON AND COMPANY,  and LAMBDA CORP., | |
| *Defendants*. | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on April 24, 2017 (the "Proposed Transaction"), pursuant to which C. R. Bard, Inc. ("Bard" or the "Company") will be acquired by Becton, Dickinson and Company ("Parent") and Lambda Corp., ("Merger Sub," and together with Parent, "BD").

2.      On April 23, 2017, Bard's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with BD.  Pursuant to the terms of the Merger Agreement, shareholders of Bard will receive $222.93 in cash and 0.5077 shares of BD stock for each share of Bard common stock.

3.      On May 23, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is a citizen of Arvada, Colorado.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Bard common stock.

9.     Defendant Bard is a New Jersey corporation and maintains its principal executive offices at 730 Central Avenue, Murray Hill, New Jersey 07974.  Bard's common stock is traded on the NYSE under the ticker symbol "BCR."

10.     Defendant Timothy M. Ring ("Ring") is a director of Bard and has served as Chairman of the Board and Chief Executive Officer ("CEO") since August 2003.

11.     Defendant David M. Barrett ("Barrett") has served as a director of Bard since June 2009.  According to the Company's website, Barrett is a member of the Audit Committee, the Regulatory Compliance Committee, and the Science and Technology Committee.

12.     Defendant Robert M. Davis ("Davis") has served as a director of Bard since October 2015.  According to the Company's website, Davis is a member of the Audit Committee, the Finance Committee, and the Science and Technology Committee.

13.     Defendant Herbert L. Henkel ("Henkel") has served as a director of Bard since April 2002.  According to the Company's website, Henkel is Chair of the Compensation Committee and a member of the Executive Committee, the Finance Committee, and the Governance Committee.

14.     Defendant John C. Kelly ("Kelly") has served as a director of Bard since October 2009.  According to the Company's website, Kelly is Chair of the Audit Committee and Interim Chair of the Finance Committee.

15.     Defendant David F. Melcher ("Melcher") has served as a director of Bard since January 2014.   According to the Company's website, Melcher is a member of the Audit Committee, the Compensation Committee, and the Finance Committee.

16.     Defendant Gail K. Naughton ("Naughton") has served as a director of Bard since July 2004.  According to the Company's website, Naughton is a member of the Governance Committee and the Regulatory Compliance Committee and Chair of the Science and Technology Committee.

17.     Defendant Tommy G. Thompson ("Thompson") has served as a director of Bard since August 2005.  According to the Company's website, Thompson is a member of the Governance Committee, the Regulatory Compliance Committee, and the Science and Technology Committee.

18.     Defendant John H. Weiland ("Weiland") is a director of Bard and has served as President and Chief Operating Officer ("COO") since August 2003 and as Vice Chairman since August 2016.

19.     Defendant Anthony Welters ("Welters") has served as a director of Bard since February 1999.  According to the Company's website, Welters is a member of the Compensation Committee and the Governance Committee and Chair of the Regulatory Compliance Committee.

20.     Defendant Tony L. White ("White") has served as a director of Bard since July 1996.  According to the Company's website, White is Chair of the Governance Committee and a member of the Compensation Committee and the Executive Committee.

21.     The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22.     Defendant Parent is a New Jersey corporation and a party to the Merger Agreement.

23.     Defendant Merger Sub is a New Jersey corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Bard (the "Class").  Excluded from the Class are defendants herein, any person, firm, trust, corporation, or other entity related to or affiliated with any defendant, and any judicial officer who handles this matter, and the immediate families of such judicial officers.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of April 20, 2017, there were approximately 72,437,191 shares of Bard common stock outstanding held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

5

29.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

31.     Bard is a leading multinational developer, manufacturer, and marketer of innovative, life-enhancing medical technologies in the fields of Vascular, Urology, Oncology, and Surgical Specialty products.

32.      The Company markets its products and services worldwide to hospitals, individual health care professionals, extended care facilities, and alternate site facilities.

33.      Bard pioneered the development of single-patient-use medical products for hospital procedures.  Today, the Company is dedicated to pursuing technological innovations that offer superior clinical benefits while helping to reduce overall costs.

34.     On January 26, 2017, Bard issued a press release wherein it reported its financial results for the fourth quarter of 2016.  The Company reported that net sales were $967.1 million, an increase of 11 percent on an as-reported basis over the prior-year period.  Net sales in the U.S. were $655.0 million and net sales outside the U.S. were $312.1 million, an increase of 8 percent

and 18 percent, respectively, over the prior-year period.  Net income was $159.6 million and diluted earnings per share were $2.11, an increase of 17 percent and 18 percent, respectively, as compared to fourth quarter 2015 results.

35.     For the full year 2016, net sales were $3,714.0 million, an increase of 9 percent over the prior-year period on an as-reported basis.  Additionally, net income was $531.4 million and diluted earnings per share were $7.03, an increase of 292 percent and 297 percent, respectively, as compared to full year 2015 results.

36.     With respect to the financial results, Individual Defendant Ring commented:

> Our strong performance in 2016 once again demonstrated the effectiveness of the execution of our strategic investment plan. We are seeing a broad contribution to growth across our portfolio, from each of our four businesses both domestically and internationally. We remain in investment mode and continue to focus on providing shareholders with above-average revenue growth and attractive profitability.

37.     On April 23, 2017, Bard issued a press release wherein it reported its financial results for the first quarter of 2017.  The Company reported that net sales were $938.8 million, an increase of 7 percent on an as-reported basis over the prior-year period.  Net sales in the U.S. were $657.2 million and net sales outside the U.S. were $281.6 million, an increase of 5 percent and 14 percent, respectively, over the prior-year period.  Net income was $178.1 million and diluted earnings per share were $2.37, an increase of 53 percent and 54 percent, respectively, as compared to first quarter 2016 results.

38.     Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which Bard will be acquired for inadequate consideration.

39.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and

severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 8.03(a) of the Merger Agreement states, in relevant part:

> The Company shall immediately cease any discussions or negotiations with any Person that may be ongoing with respect to a Company Acquisition Proposal and, if applicable, shall use reasonable best efforts to have returned to the Company or destroyed any confidential information that has been provided to any Person in any such discussions or negotiations occurring in the six (6) months prior to the date of this Agreement. From and after the date of this Agreement until the earlier to occur of the Effective Time or the date of termination of this Agreement in accordance with Article 10, the Company shall not, nor shall it permit any of its Subsidiaries to, nor shall it authorize or permit any of its officers, directors or employees or any Affiliate, investment banker, financial advisor, attorney, accountant or other representative retained by it or any of its Subsidiaries to (and shall use reasonable best efforts to cause such Persons not to), directly or indirectly, (i) solicit, initiate or knowingly encourage (including by way of furnishing information which has not been previously publicly disseminated), or take any other action designed to facilitate, any inquiry or the making or submission of any inquiry, proposal, indication of interest or offer which constitutes, or would reasonably be expected to lead to, a Company Acquisition Proposal, (ii) subject to Section 8.03(b), approve or recommend, or propose to approve or recommend, a Company Acquisition Proposal, (iii) subject to Section 8.03(b), approve or recommend, or propose to approve or recommend, or execute or enter into any letter of intent, memorandum of understanding, merger agreement or other agreement, arrangement or understanding relating to a Company Acquisition Proposal (other than an Acceptable Confidentiality Agreement) or a Superior Proposal (each an "Alternative Acquisition Agreement"), (iv) enter into, continue or otherwise participate in any discussions or negotiations regarding any Company Acquisition Proposal, or (vi) agree to do any of the foregoing[.]

40.    Further, the Company must promptly advise BD of any proposals or inquiries received from other parties.  Section 8.03(c) of the Merger Agreement states:

> (c) In addition to the obligations of the Company and Parent set forth in Section 8.03(a) and Section 8.03(b), the Company shall promptly (and in any event within 24 hours) advise Parent orally and in writing of any inquiries, proposals or offers with respect to a Company Acquisition Proposal that are received by, or any non-public information with regard to such Company Acquisition Proposal is requested from, or any discussions or negotiations are sought to be initiated regarding such Company Acquisition Proposal with, the Company (or any of its Representatives), indicating, in connection with such notice, the identity of the

Person or group of Persons making the inquiry, proposal or offer and the material terms and conditions of any such inquiries, proposals or offers (including, if applicable, copies of any written inquiries, proposals or offers, including proposed agreements) and thereafter shall keep Parent reasonably informed, on a prompt basis (and, in any event, within 24 hours) of the status of any discussions or negotiations with respect to any such inquiries, proposals or offers and the details of any material changes to the status and material terms of any such inquiries, proposals or offers (including any material amendments thereto or any change to the scope or material terms or conditions thereof, and including copies of any written inquiries, proposals or offers, including proposed agreements and modifications thereto).

41.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants BD a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 8.03(b) of the Merger Agreement provides:

(b) Except as permitted pursuant to this Section 8.03(b), the Company Board shall not (x) effect a Company Adverse Recommendation Change or (y) cause or permit the Company or any of its Subsidiaries to enter into any Alternative Acquisition Agreement. Notwithstanding anything to the contrary in this Agreement, prior to receipt of the Company Stockholder Approval, the Company Board may effect a Company Adverse Recommendation Change if (and only if): (I) (A) a written Company Acquisition Proposal that was not solicited in violation of this Agreement is made to the Company by a Third Party and such Company Acquisition Proposal is not withdrawn or (B) there has been an Intervening Event; (II) in the case of a Company Acquisition Proposal, the Company Board concludes in good faith, after consultation with the Company's outside financial advisors and outside legal counsel, that such Company Acquisition Proposal constitutes a Superior Proposal; and (III) the Company Board concludes in good faith, after consultation with the Company's outside legal counsel, that the failure to make a Company Adverse Recommendation Change would be reasonably likely to be inconsistent with its fiduciary duties under applicable Laws; provided, however, that, prior to making any Company Adverse Recommendation Change neither the Company Board nor any committee thereof shall:

(i) in the case of Section 8.03(b)(I)(A), make a Company Adverse Recommendation Change with respect to a Superior Proposal and/or authorize the Company to enter into any Alternative Acquisition Agreement or in the case of Section 8.03(b)(I)(B) make a Company Adverse Recommendation Change, unless (A) the Company Board provides Parent at least three (3) Business Days' prior written notice of its intention to take such action, which notice shall include, as applicable, (a) the information with respect to the Superior Proposal that is

specified in Section 8.03(b)(i), as well as a copy of such Company Acquisition Proposal, or (b) the facts and circumstances in reasonable detail of the Intervening Event; (B) during the three (3) Business Days following such written notice (or such shorter period as is specified below), the Company Board and its Representatives have negotiated in good faith with Parent (to the extent Parent desires to negotiate) regarding any revisions to the terms of the transactions contemplated hereby proposed by the Parent in response to such Superior Proposal or Intervening Event, as applicable; and (C) at the end of the three (3) Business Day period described in the foregoing clause (B), the Company Board concludes in good faith, after consultation with the Company's outside legal counsel and financial advisors (and taking into account any adjustment or modification of the terms of this Agreement proposed in writing by Parent), that, as applicable (a) the Company Acquisition Proposal continues to be a Superior Proposal or (b) the Intervening Event continues to warrant a Company Adverse Recommendation Change and in each case, that the failure to make such Company Adverse Recommendation Change would be reasonably likely to be inconsistent with its fiduciary duties under applicable Laws. Any material amendment or modification to any Superior Proposal will be deemed to be a new Company Acquisition Proposal for purposes of this Section 8.03, and the Company shall promptly (but in any event within 24 hours of occurrence) notify Parent of any such new Company Acquisition Proposal and the Parties shall comply with the provisions of this Section 8.03(b) with respect thereto; provided, however, that the period during which the Company Board effecting the Company Adverse Recommendation Change and its Representatives are required to negotiate in good faith with Parent regarding any revisions to the terms of this Agreement proposed by Parent in response to such new Company Acquisition Proposal pursuant to clause (B) above shall expire on the later to occur of two (2) Business Days after the Company Board provides written notice of such new Company Acquisition Proposal to Parent and the end of the original three (3) Business Day period described in clause (B) above; provided, further, that (x) whether or not there is a Company Adverse Recommendation Change, unless this Agreement has been terminated in accordance with Section 10.01, the Company Board shall submit this Agreement for approval by the Company stockholders at the Company Stockholder Meeting and (y) in the event there is a Company Adverse Recommendation Change made in compliance with this Section 8.03(b) with respect to a Superior Proposal, the Company shall only enter into an Alternative Acquisition Agreement with respect thereto by terminating this Agreement in accordance with Section 10.01(d)(ii).

42.     Further locking up control of the Company in favor of BD, the Merger Agreement provides for a "termination fee" of $750 million, payable by the Company to BD if the Individual Defendants cause the Company to terminate the Merger Agreement.

43.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

44.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

45.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

46.     The merger consideration also fails to adequately compensate the Company's stockholders for the significant synergies that will result from the merger.  According to the press release announcing the Proposed Transaction, approximately $300 million of estimated annual, pre-tax, run-rate cost synergies are expected by fiscal year 2020.  BD also expects to benefit from revenue synergies beginning in fiscal year 2019.

47.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

48.     Meanwhile, certain of the Company's directors and officers stand to receive substantial benefits as a result of the Proposed Transaction.

49.     For example, two members of the Board, including Individual Defendant Ring, will be appointed to the BD board of directors following the merger.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

50.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

51.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

52.     First, the Registration Statement omits material information regarding Bard's financial projections, BD's financial projections, and the analyses performed by the Company's financial advisor, Goldman Sachs & Co. ("Goldman Sachs"), in support of its so-called fairness opinion.

53.     With respect to Bard's financial projections, the Registration Statement fails to disclose: (i) capital expenditures; (ii) changes in net working capital; (iii) net income; (iv) net earnings; (v) earnings per share; (vi) interest expense; (vii) income taxes; (viii) depreciation and amortization; (ix) amortization of intangibles; and (x) a reconciliation of all non-GAAP to GAAP metrics.

54.     The Registration Statement fails to disclose BD's financial projections, which are material as a significant portion of the merger consideration is BD stock.

55.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values of Bard; (ii) the inputs underlying the discount rates ranging from 6.0% to 7.0%; (iii) Goldman Sachs' basis for applying perpetuity growth rates ranging from 1.0% to 1.5%; and (iv) Bard's net debt as of December 31, 2016.

56.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) projected dividends; (ii) estimated adjusted earnings per share; (iii) Goldman Sachs' basis for applying price to forward adjusted earnings per share multiples of 18.0x to 22.0x; and (iv) the inputs underlying the illustrative discount rate of 5.7%.

57.     With respect to Goldman Sachs' *Illustrative Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman Sachs in the analysis.

*58.*     With respect to Goldman Sachs' *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman Sachs in the analysis.

59.     With respect to Goldman Sachs' *Implied Premia Paid Analysis*, the Registration Statement fails to disclose:  (i) the acquisition transactions observed by Goldman Sachs in the analysis; and (ii) the implied premia paid in such transactions.

60.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

61.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Bard Board of Directors; Bard's Reasons for the Merger"; (iii) "Opinion of Bard's Financial Advisor"; and (iv) "Certain Unaudited Prospective Financial Information."

62.     Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

13

63.     Specifically, the Registration Statement fails to disclose the nature of the communications regarding future employment and directorship of Bard's officers and directors, including who participated in all such communications.

64.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Bard Board of Directors; Bard's Reasons for the Merger"; and (iii) "Interests of Bard's Directors and Executive Officers in the Merger."

66.     Third, the Registration Statement omits material information regarding potential conflicts of interest of Goldman Sachs.

67.     Specifically, the Registration Statement fails to disclose Goldman Sachs' holdings in BD's and its affiliates' stock.

68.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

69.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i)

"Background of the Merger"; (ii) "Recommendation of the Bard Board of Directors; Bard's Reasons for the Merger"; and (iii) "Opinion of Bard's Financial Advisor."

70.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Bard's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Bard

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Bard is liable as the issuer of these statements.

73.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

74.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

75.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

76.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

77.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

78.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and BD

79.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

80.     The Individual Defendants and BD acted as controlling persons of Bard within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Bard and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

81.     Each of the Individual Defendants and BD was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

83.     BD also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

84.     By virtue of the foregoing, the Individual Defendants and BD violated Section 20(a) of the 1934 Act.

85.     As set forth above, the Individual Defendants and BD had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 2, 2017

**LITE DEPALMA GREENBERG, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street – Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
sdr@rl-legal.com
bdl@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: June 2, 2017

**LITE DEPALMA GREENBERG, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street – Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
sdr@rl-legal.com
bdl@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Barbara Stanford Tanguma ("Plaintiff"), hereby declare as to the following claims asserted under the federal securities laws that:

1.    Plaintiff has reviewed the complaint and authorizes its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or to participate in this action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition or trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in C.R. Bard, Inc. (NYSE: BCR) securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Transaction Date | Price Per Share | |
|---|---|---|---|---|---|
| *508,419 | BCR | ~~inherited~~ ~~10/18/2004~~ transferred to me | 308.340 | Current Value — |
| 467 | BCR | 10/18/2004 | 10/18/2004 | *52.90 | |
| | | | | | |
| | | | | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.    Plaintiff will actively monitor and vigorously pursue this action for the Class' benefit.

6.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:   5/23/17   .

✱ The stock was transferred to me on the date of my father's death 10/18/2004. All dividends were reinvested each quarter since October 2004. Stock managed by Vanguard. BBST

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as the Court orders or approves.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this _23rd_ day of _____May_____, 2017.

*Barbara Jean Stanford Tanguma*
Signature

*Barbara Jean Stanford Tanguma*
Print Name

2